UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20700-Civ-COOKE/TURNOFF

ANTHONY RODRIGUEZ,

    Plaintiff

vs.

CITY OF DORAL, *et al.*,

    Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

THIS CASE is before me upon Defendant Juan Carlos Bermudez's Motion to Dismiss Plaintiff's Complaint. (ECF No. 19). I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons explained in this Order, the Motion is granted in part and denied in part.

### I. BACKGROUND

The following facts are taken from the Plaintiff Anthony Rodriguez's Amended Complaint. Defendant City of Doral's Police Department (the "Department") hired Rodriguez in January 2008, as a police detective. Rodriguez claims that, at all times, his job performance met or exceeded the Department's expectations. However, on around January 29, 2009, a Department representative told Rodriguez he was terminated. When Rodriguez requested an explanation, a Department representative told him that the police chief had no obligation to give him one.

After Rodriguez's termination, the Florida Department of Law Enforcement ("FDLE") launched an investigation in response to allegations of the chief of police's and other City of Doral high ranking officials' misconduct. Rodriguez alleges that the FDLE

investigation revealed that two internal probes that the Doral Police Department had launched targeting Rodriguez were politically motivated. Additionally, Rodriguez alleges that the FDLE ultimately concluded that Defendant Mayor Juan Carlos Bermudez was responsible for Rodriguez's termination, and he targeted Rodriguez because of Rodriguez's relationship with Councilwoman Sandra Ruiz, one of Bermudez's political enemies.[1]

Rodriguez brings this action pursuant to 42 U.S.C. § 1983. He alleges the City of Doral and Bermudez violated his First and Fourteenth Amendment rights when they terminated his employment because of his political association. Count I is directed against the City of Doral. Count II is directed against Bermudez in his individual capacity.

Bermudez moves to dismiss Count II of the Amended Complaint on the grounds that he is shielded by the doctrine of qualified immunity and the complaint's allegations are conclusory and fail to state a claim against him. Bermudez also argues that Rodriguez fails to state sufficient facts to support a request for punitive damages.

## II. LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The standard of facial plausibility is met "when the plaintiff pleads factual content that allows the court to

---

[1] The portions of the FDLE report that Rodriguez cites in his Amended Complaint appear to be missing from the excerpted report he attached to the complaint.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). A court's consideration when ruling on a motion to dismiss is limited to the complaint and any incorporated exhibits. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003). Thus, "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id*. (internal quotation marks omitted). "Absent such allegations, it is appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage." *Id*. (internal quotation marks omitted).

### III. ANALYSIS

#### A. Qualified Immunity

Qualified immunity protects government officials sued in their individual capacities for performing discretionary functions, "as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) (internal quotation marks omitted). "[T]he public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Id*. After he or she does so, the burden shifts to the plaintiff to establish that the official is not entitled to qualified immunity. *Id*.

The Supreme Court has established a two-step inquiry to determine whether qualified immunity applies. First, a court must determine whether the plaintiff's allegations of fact, if true, establish a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, a court must determine whether the constitutional right was "clearly established" at the time. *Id*. "'Clearly established law' is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). This does not mean, however, "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope*, 536 U.S. at 739. Rather, a court must consider whether "in the light of pre-existing law the unlawfulness [is] apparent." *Id*.

Neither party disputes that Bermudez was performing a discretionary function when he decided to terminate Rodriguez's employment. I will therefore turn to the questions of whether a mayor's decision to fire a police officer for his political association violates the officer's First and Fourteenth Amendments and whether this constitutional right was clearly established at the time of Rodriguez's termination.

In political patronage[2] cases, the Supreme Court has balanced the strong constitutional tradition of protecting an individual's freedom of association and belief against the "need to insure effective government and the efficiency of public employees." *Elrod v. Burns*, 427 U.S. 347, 356-57, 364 (1976), *see also Branti v. Finkel*, 445 U.S. 507, 513-18 (1980). In *Elrod*, the Supreme Court held patronage dismissals should be limited to "policymaking positions." 427 U.S. at 367. The Court reasoned that

---

[2] Under the patronage practice, "public employees hold their jobs on the condition that they provide, in some acceptable manner, support for the favored political party." *Elrod v. Burns*, 427 U.S. 347, 359 (1976).

4

"[n]onpolicymaking individuals usually have only limited responsibility and are therefore not in a position to thwart the goals of the in-party." *Id*. The Court acknowledged that there is no "clear line" between policymaking and nonpolicymaking positions, and suggested that the distinction would lie in the nature of the employee's responsibilities. *Id*. at 367-68.

Several years after *Elrod*, the Supreme Court again faced the issue of patronage dismissals in *Branti v. Finkel*, 445 U.S. 507 (1980). There, the Court refined the standard in *Elrod*, holding that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518.

In *Terry v. Cooke*, 866 F.2d 373 (11th Cir. 1989), the Eleventh Circuit applied the *Elrod-Branti* standard in the area of law enforcement. There, the court considered the constitutionality of a newly elected sheriff's decision to refuse to reappoint or rehire all deputy sheriffs, clerks, investigators, dispatchers, jailers, and process servers, who worked under his predecessor. The court concluded that, given the "closeness and cooperation required between sheriffs and their deputies," deputy sheriffs were susceptible to patronage dismissals. *Id*. at 377. In contrast, the court remanded the case back to the district court to consider whether "loyalty to an individual sheriff is an appropriate requirement for effective job performance for the remaining positions of clerk, investigator, dispatcher, jailer, and process server." *Id*. at 377-78. The court stated that the district court's determination would depend on "the actual responsibilities of each position and the relationship of each to the sheriff." *Id*. at 378. The court suggested that

5

patronage dismissals would not be constitutionally acceptable for those in positions that "traditionally revolve around limited objectives and defined duties and do not require those holding them to function as the alter ego of the sheriff or ensure that the policies and goals of the office are implemented." *Id*.

Thereafter, in *Cutcliffe v. Cochran*, 117 F.3d 1353 (11th Cir. 1997), the Eleventh Circuit again applied the *Elrod-Branti* standard. Recognizing the *Terry* court's more narrow holding that deputy sheriffs are subject to patronage dismissals, the court upheld the district court's summary judgment against plaintiffs, former deputy sheriffs, and in favor of the Sherriff of Broward County. Id. at 1358. In reaching its decision, the court reluctantly noted it was bound by *Terry*, a prior panel decision, because *Cutcliffe* also involved deputy sherrifs. *Id*. The court, however, suggested that, ordinarily, "plaintiffs may be entitled to a factual determination under *Branti* as to whether their positions implicate partisan political concerns in their effective functioning." *Id*.

It is Rodriguez's burden to show Bermudez is not entitled to qualified immunity. A review of the applicable case law reveals that, to state a claim for violations of his First and Fourteenth Amendment rights based on a patronage dismissal, Rodriguez must plead facts to show that his position is not one in which party affiliation is an appropriate requirement for the effective performance of the job. Rodriguez has not done so. Ordinarily, the failure to establish the existence of a constitutional violation is sufficient reason to grant a motion to dismiss on qualified immunity grounds. However, here the failure appears to be one of poor draftsmanship—Rodriguez did not set forth any facts

regarding the nature of his position or his job responsibilities.[3] I decline to dismiss Count II without giving Rodriguez an opportunity to amend his pleading.

### B. Punitive Damages

Punitive damages are appropriate in § 1983 cases "where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Having reviewed the Amended Complaint, I agree with Bermudez that Rodriguez fails to state any facts to support his single conclusory allegation that Bermudez "acted with reckless and deliberate indifference to Rodriguez's constitutional rights, or subjected Rodriguez to such deprivations willfully, intentionally, maliciously, and with reckless disregard to Rodriguez's rights." I will, however, allow Rodriguez to amend his complaint to allege sufficient facts to support the demand for punitive damages.

### IV. CONCLUSION

For the reasons provided, it is **ORDERED and ADJUDGED** that Defendant Juan Carlos Bermudez's Motion to Dismiss Plaintiff's Complaint (ECF No. 19) is **GRANTED in part and DENIED in part**. Count II of Plaintiff's Complaint and Plaintiff's demand for punitive damages are **DISMISSED** *without prejudice.* Plaintiff shall file an amended complaint within fourteen days of the date of this Order.

---

[3] Because Rodriguez's Amended Complaint is devoid of any facts regarding his responsibilities, this Court is also unable to determine conclusively whether his right to be free from patronage dismissal was clearly established at the time of his termination. *See Kolman v. Sheahan*, 31 F.3d 429, 434 (7th Cir. 1994) ("But even a qualified immunity inquiry cannot take place until the facts about the [plaintiffs' positions at a public agency] and the plaintiffs' roles there are put on the table."); *cf. Dandino v. Tieri*, 878 F. Supp. 129, 133 (N.D. Ill. 1994) (declining to dismiss patronage dismissal case without a developed factual record).

**DONE and ORDERED** in chambers at Miami, Florida, this 16th day of October 2012.

_____
MARCIA G. COOKE
United States District Judge

Copies to:
*William C. Turnoff, U.S. Magistrate Judge*
*Attorneys of record*