UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20700-Civ-COOKE/TURNOFF

ANTHONY RODRIGUEZ,

    Plaintiff
vs.

CITY OF DORAL, *et al.*,

    Defendants.
_____/

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

THIS CASE is before me upon Defendant Juan Carlos Bermudez's Motion to Dismiss Plaintiff's Second Amended Complaint. ECF No. 33. I have reviewed the arguments, the record, and the relevant legal authorities. For the reasons explained in this Order, the Motion is denied.

**I. BACKGROUND**

The following facts are taken from the Plaintiff Anthony Rodriguez's Second Amended Complaint. Defendant City of Doral ("Doral") hired Rodriguez in January 2008, as a police detective. Second Am. Comp. ¶ 11. Rodriguez claims that, at all times, his job performance met or exceeded Doral's expectations. *Id* at ¶ 13. However, on January 29, 2009, a Doral representative told Rodriguez he was terminated as a Doral police detective. *Id* at ¶ 14. When Rodriguez requested an explanation, the Doral representative told him that the Doral Chief of Police was under no obligation to give him one. *Id.*

After Rodriguez's termination, the Florida Department of Law Enforcement ("FDLE") launched an investigation in response to allegations of the Chief of Police's

and other City of Doral high ranking officials' misconduct. Rodriguez alleges that the FDLE investigation revealed, via two internal probes, that the Doral Police Department's termination of Rodriguez was politically motivated. *Id* at ¶ 16. Additionally, Rodriguez alleges that the FDLE ultimately concluded that then Mayor Bermudez was responsible for Rodriguez's termination, and that he had targeted Rodriguez because of Rodriguez's relationship with Councilwoman Sandra Ruiz, one of Bermudez's political rivals.[1] *See id.*

As a police detective with the Doral Police Department, Rodriguez claims that his job duties included examining crime scenes to obtain clues and evidence, obtaining evidence from suspects, providing testimony as a witness in court, analyzing police reports, and preparing charges or responses to charges, and information for court cases. *Id* at ¶ 12. As such, his position as a detective allegedly did not implicate partisan political concerns. *See id.* Rodriguez alleges that loyalty to Bermudez, who was not his supervisor nor in his chain of command, was not required for an effective performance of his duties. *See id.*

Rodriguez brings this action pursuant to 42 U.S.C. § 1983. He alleges that Doral and Bermudez violated his First and Fourteenth Amendment rights when they terminated his employment because of his political association. Count I is directed against Doral. Count II is directed against Bermudez in his individual capacity.

Bermudez moves to dismiss Count II of the Amended Complaint on the following grounds: (1) the allegations against him are conclusory and fail to state a § 1983 claim

---

[1] As I already noted in my October 16, 2012 Order, the portions of the FDLE report that Rodriguez cites in his Second Amended Complaint appear to be missing from the excerpted report he attached to the Complaint. The report collects sworn testimony but contains no conclusions.

against him; (2) Bermudez is shielded by the doctrine of qualified immunity; and (3) the Second Amended Complaint fails to state sufficient facts to support a request for punitive damages.

## II. LEGAL STANDARDS

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41 (1957)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Detailed factual allegations are not required, but a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555). A complaint's factual allegations must be enough to raise a right to relief above speculative level. *Id.*

A *pro se* pleading is viewed with considerable leniency and "held to a less stringent standard than pleadings drafted by attorneys." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). The leniency afforded *pro se* plaintiffs in assessing their pleadings does not, however, permit a trial court to act as counsel for a party or to rewrite deficient pleadings. *Lampkin-Asam v. Volusia County Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008).

## III. ANALYSIS

### A. Sufficiency of the Allegations Against Bermudez

Bermudez argues that the Second Amended Complaint fails to allege facts sufficient to support the § 1983 claim brought against him. Mot. to Dismiss 4-6. Specifically, Bermudez alleges that the two allegations against him: (1) that he instructed Doral's Chief of Police, Ricardo Gomez, and the City Manager, Yvonne Soler-McKinley, to terminate Rodriguez for his political association; and (2) that the FDLE concluded that Bermudez was the moving force behind Doral's pretextual termination are conclusory. *Id* at 5.

Having reviewed the Second Amended Complaint, I disagree with Bermudez that Rodriguez fails to state sufficient facts to support his claims. The Second Amended Complaint states that Rodriguez was terminated on the order of Bermudez because of Rodriguez's political association. Although Bermudez is correct that the FDLE report attached to the Complaint does not contain a conclusion identifying the cause of Rodriguez's termination, the FDLE report nevertheless describes the contents of sworn testimony from witnesses that support Rodriguez's claims. For example, according to the FDLE report, Doral Police Department Sergeant Georges Gulla allegedly declared under oath that the Chief of Police had asked him to tamper with Rodriguez's performance evaluation scores. FDLE Report, Second Am. Comp. Ex A. Accordingly, the allegations in the Second Amended Complaint are sufficient to survive Bermudez's Motion to Dismiss.

## B. Qualified Immunity

Bermudez argues that he is entitled to qualified immunity and that the Second Amended Complaint fails to state facts showing that Rodriguez's position did not implicate partisan political concerns. Mot. to Dismiss 6-8.

Qualified immunity protects government officials sued in their individual capacities for performing discretionary functions, "as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Storck v. City of Coral Springs*, 354 F.3d 1307, 1314 (11th Cir. 2003) (internal quotation marks omitted). "[T]he public official must first prove that he was acting within the scope of his discretionary authority when the allegedly unconstitutional acts took place." *Id*. After he or she does so, the burden shifts to the plaintiff to establish that the official is not entitled to qualified immunity. *Id*.

The Supreme Court has established a two-step inquiry to determine whether qualified immunity applies. First, a court must determine whether the plaintiff's allegations of fact, if true, establish a constitutional violation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, a court must determine whether the constitutional right was "clearly established" at the time. *Id*. "'Clearly established law' is law that is sufficiently established so as to provide public officials with 'fair notice' that the conduct alleged is prohibited." *Randall v. Scott*, 610 F.3d 701, 715 (11th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). This does not mean, however, "that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Rather, a

court must consider whether "in the light of pre-existing law the unlawfulness [is] apparent." *Id*.

In political patronage[2] cases, the Supreme Court has balanced the strong constitutional tradition of protecting an individual's freedom of association and belief against the "need to insure effective government and the efficiency of public employees." *Elrod v. Burns*, 427 U.S. 347, 356-57, 364 (1976), *see also Branti v. Finkel*, 445 U.S. 507, 513-18 (1980). In *Elrod*, the Supreme Court held patronage dismissals should be limited to "policymaking positions." 427 U.S. at 367. The Court reasoned that "[n]onpolicymaking individuals usually have only limited responsibility and are therefore not in a position to thwart the goals of the in-party." *Id*. The Court acknowledged that there is no "clear line" between policymaking and nonpolicymaking positions, and suggested that the distinction would lie in the nature of the employee's responsibilities. *Id*. at 367-68.

Several years after *Elrod*, the Supreme Court again faced the issue of patronage dismissals in *Branti v. Finkel*, 445 U.S. 507 (1980). There, the Court refined the standard in *Elrod*, holding that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* at 518.

In *Terry v. Cooke*, 866 F.2d 373 (11th Cir. 1989), the Eleventh Circuit applied the *Elrod-Branti* standard in the area of law enforcement. There, the court considered the constitutionality of a newly elected sheriff's decision to refuse to reappoint or rehire all

---

[2] Under the patronage practice, "public employees hold their jobs on the condition that they provide, in some acceptable manner, support for the favored political party." *Elrod v. Burns*, 427 U.S. 347, 359 (1976).

deputy sheriffs, clerks, investigators, dispatchers, jailers, and process servers who worked under his predecessor.  The court concluded that, given the "closeness and cooperation required between sheriffs and their deputies," deputy sheriffs were susceptible to patronage dismissals.  *Id*. at 377.  In contrast, the court remanded the case back to the district court to consider whether "loyalty to an individual sheriff is an appropriate requirement for effective job performance for the remaining positions of clerk, investigator, dispatcher, jailer, and process server."  *Id*. at 377-78.  The court stated that the district court's determination would depend on "the actual responsibilities of each position and the relationship of each to the sheriff."  *Id*. at 378.  The court suggested that patronage dismissals would not be constitutionally acceptable for those in positions that "traditionally revolve around limited objectives and defined duties and do not require those holding them to function as the alter ego of the sheriff or ensure that the policies and goals of the office are implemented."  *Id*.

Thereafter, in *Cutcliffe v. Cochran*, 117 F.3d 1353 (11th Cir. 1997), the Eleventh Circuit again applied the *Elrod-Branti* standard.  Recognizing the *Terry* court's more narrow holding that deputy sheriffs are subject to patronage dismissals, the court upheld the district court's summary judgment against plaintiffs, former deputy sheriffs, and in favor of the Sherriff of Broward County.  Id. at 1358.  In reaching its decision, the court reluctantly noted it was bound by *Terry*, a prior panel decision, because *Cutcliffe* also involved deputy sheriffs.  *Id*.  The court, however, suggested that, ordinarily, "plaintiffs may be entitled to a factual determination under *Branti* as to whether their positions implicate partisan political concerns in their effective functioning."  *Id*.

7

Rodriguez has pled that his job duties included examining crime scenes to obtain clues and evidence, obtaining evidence from suspects, providing testimony as witness in court, analyzing police reports, preparing charges or responses to charges, and information for court cases. Second Am. Comp. ¶ 12. Rodriguez further alleged that Bermudez was not his supervisor nor in his chain of command. *See id.* I find, at this procedural stage, that Rodriguez's position as a detective did not implicate partisan political concerns and that therefore dismissal is not appropriate at this time. *See Matlock v. Barnes*, 932 F.2d 658, 664 (7th Cir. 1991) (finding the duties of an investigator for a city legal department too limited to qualify plaintiff as a policymaker). The duties described revolve around "limited objectives." *Terry v. Cooke*, 866 F.2d 373, 378 (11th Cir. 1989). Rodriguez alleges he had no duty to ensure that the policies and goals of Doral or Bermudez were implemented. *Id*. Further, Rodriguez alleges that Bermudez was not in Rodriguez's chain of command. Accordingly, Rodriguez sufficiently pled that loyalty to Bermudez was not a requirement necessary to the proper performance of his duties. As a result, construing all reasonable inferences in the light most favorable to Rodriguez, Rodriguez has factually alleged the deprivation of his constitutional rights.

### C. Punitive Damages

Punitive damages are appropriate in § 1983 cases "where a defendant's conduct is motivated by evil intent or involves callous or reckless indifference to federally protected rights." *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1089 (11th Cir. 1986) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The award of punitive damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment,

and the advisability of a deterrent to future illegal conduct. *Eggleton v. Jackson*, 09-CV-81292, 2011 WL 379186, at *13 (S.D. Fla. Jan. 13, 2011).

Rodriguez alleges that Bermudez acted "willfully, intentionally, maliciously, and with evil intent" by ordering the termination of Rodriguez in violation of his First Amendment right to political association and by covering up his unlawful motive by ordering the Chief of Police and the Doral City Manager to lie under oath about the reasons for Rodriguez's termination. Second Am. Comp. ¶ 36. I find that Rodriguez's allegations that Bermudez ordered the cover-up regarding Rodriguez's termination, and the allegations that Bermudez induced the Chief of Police and the City Manager's alleged perjury, are sufficient to meet his pleading burden at this procedural stage that Bermudez purportedly acted with reckless indifference to a federally protected right. Accordingly, I decline to strike Rodriguez's request for punitive damages at this time.

### IV. CONCLUSION

For the reasons provided, it is **ORDERED and ADJUDGED** that Defendant Juan Carlos Bermudez's Motion to Dismiss Plaintiff's Complaint, ECF No. 33, is **DENIED**.

**DONE and ORDERED** in chambers at Miami, Florida, this 30th day of September 2013.

_____
MARCIA G. COOKE
United States District Judge

Copies to:
*William C. Turnoff, U.S. Magistrate Judge*
*Attorneys of record*